IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| J&J HUDSON, LLC, an Oklahoma limited liability company,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>SIMMONS BANK, an Arkansas state bank,<br><br>Defendant/Counterclaimant,<br><br>v.<br><br>PIVOT PROJECT DEVELOPMENT, LLC, an Oklahoma limited liability company; CANDACE BAITZ, an individual; JONATHAN DODSON, an individual; RUSSELL WANTLAND, an individual; DAVID WANZER, an individual; and JE DUNN CONSTRUCTION COMPANY, and PRISM ELECTRIC, INC.,<br><br>Counterclaim Defendants. | Case No. CIV-24-1071-D |

## ORDER

Before the Court is Defendant/Counterclaimant Simmons Bank's Motion to Strike Demand for Jury Trial [Doc. No. 65]. The Bank moves pursuant to Federal Rule of Civil Procedure 39(a)(2) to strike the jury trial demand asserted by Plaintiff/Counterclaim Defendant J&J Hudson, LLC and Counterclaim Defendants Pivot Project Development,

LLC, Candace Baitz, Jonathan Dodson, Russell Wantland, David Wanzer. The motion is fully briefed [Doc. Nos. 69, 70, 75] and at issue.[1]

## Background

This action concerns the financing and construction of a commercial real estate project. Although the case has a somewhat complicated factual background, for purposes of resolving this motion, the relevant facts are straightforward.

J&J and the Bank entered into a Loan Agreement whereby the Bank would extend financing to J&J for the construction of a commercial building. The Loan Agreement contains the following provision:

> 6.1 **WAIVER OF JURY.** BORROWER AND LENDER (BY ITS ACCEPTANCE HEREOF) FULLY, VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY OR TO HAVE A JURY PARTICIPATE IN ANY DISPUTE, ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) UNDER THIS LOAN AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED (OR WHICH MAY IN THE FUTURE BE DELIVERED) IN CONNECTION HEREWITH OR ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS LOAN AGREEMENT, THE NOTES AND/OR THE SECURITY INSTRUMENTS. BORROWER AND LENDER AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING AND COMMITMENT DESCRIBED HEREIN OR IN THE OTHER LOAN DOCUMENTS.

*See* Movant's Br., Ex. 1 at 30 § 6.1. A group of Guarantors (Counterclaim Defendants Pivot Project Development, LLC, Candace Baitz, Jonathan Dodson, Russell Wantland, David Wanzer) executed Guaranty Agreements guaranteeing J&J's obligations under the Loan Agreement. The Guaranty Agreements contain the following provision:

---

[1] Only J&J filed a response in opposition. The Guarantors did not respond and have therefore confessed the argument. *See* LCvR7.1(g).

> (i) GUARANTOR WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS GUARANTY. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY GUARANTOR, AND GUARANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GUARANTOR FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL. GUARANTOR ACKNOWLEDGES THAT EACH HAS READ AND UNDERSTANDS THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION. THIS GUARANTY CONSTITUTES A WRITTEN CONSENT TO WAIVER OF TRIAL BY JURY, AND LENDER IS AUTHORIZED AND EMPOWERED TO FILE THIS GUARANTY WITH THE CLERK OR JUDGE OF ANY COURT OF COMPETENT JURISDICTION AS A STATUTORY WRITTEN CONSENT TO WAIVER OF TRIAL BY JURY.

*See Movant's Br.,* Exs. 2-6 at 6 § 14(i). Certain aspects of the construction project did not go as planned and this action followed.

In its Complaint, J&J asserts claims against the Bank for breach of contract, fraud, breach of fiduciary duty, breach of implied duty of good faith and fair dealing, and breach of construction trust. The claims are premised on allegations that the Bank refused to make loan advances as required by the Loan Agreement, misrepresented that it would extend the loan period, and misrepresented that it would issue a letter of credit. The Bank filed an Answer and Counterclaims against J&J and the Guarantors seeking recovery of the amounts owed under the Loan Agreement, enforcement of the guaranties, appointment of a receiver, and foreclosure of the Bank's mortgage and security interests securing repayment of loan.[2]

---

[2] The Bank also named JE Dunn (the contractor on the project) and Prism Electric (a subcontractor) as counterclaim defendants because they filed liens against the property the Bank is seeking to foreclose on. JE Dunn asserts a breach of contract claim against J&J and is seeking foreclosure of its lien.

In its civil cover sheet [Doc. No. 1-3] and Joint Status Report [Doc. No. 38], J&J demands a jury trial on its claims. The Bank moves to strike the jury trial demand, contending that J&J and the Guarantors knowingly and voluntarily waived their right to a jury trial in the Loan Agreement and Guaranty Agreements and such waivers are enforceable under federal law. J&J counters that state law governs the issue and, under Oklahoma law, pre-dispute contractual jury trial waivers are unenforceable.

The motion therefore presents two questions: first, does a federal court sitting in diversity apply federal or state law to determine the enforceability of a pre-dispute contractual jury trial waiver and second, are pre-dispute contractual jury trial waivers void under Oklahoma law? Neither question presents an easy answer but after thoroughly considering the parties' positions, the Court concludes that the Bank has the better argument.

## Discussion

"Absent any conflicting constitutional requirements, federal statutes or Federal Rules of Civil Procedure, a federal district court sitting in diversity applies federal procedural law and state substantive law." *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1203 (10th Cir. 2012) (citing *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 n. 7 (1996).[3] Substantive laws are those that provide the "rights and remedies that bear upon the outcome of the suit" whereas procedural laws provide "the processes or modes for

---

[3] "Federal Rules of Civil Procedure 38 and 39 relate to jury trial waivers, but only in the context of cases already in litigation." *In re Cnty. of Orange*, 784 F.3d 520, 529 (9th Cir. 2015). Thus, there does not appear to be a federal statute or rule that conflicts with the issue presented here.

enforcing those substantive rights and remedies." *Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 668 (10th Cir. 2018). But "distinguishing between procedural and substantive law is not always a simple task." *Id.* "Where the line between procedure and substance is unclear, the Supreme Court has set forth a multi-faceted analysis[,]" known as the *Erie* analysis, "designed to prevent both forum shopping and the inequitable administration of the laws." *Id.*

The Supreme Court, applying the *Erie* doctrine, has twice concluded that the right to a jury trial is a governed by federal law. In *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.,* 356 U.S. 525, 538-540 (1958), the Supreme Court held that, despite state law to the contrary, a federal court must apply the federal policy favoring jury decisions of disputed fact questions. Subsequently, in *Simler v. Conner*, 372 U.S. 221, 222 (1963), the Supreme Court, in considering whether state or federal law defines an action as legal or equitable, stated that "the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions."

The Tenth Circuit applied *Simler's* holding to a pre-dispute contractual jury trial waiver in *Telum, Inc. v. E.F. Hutton Credit Corp*., 859 F.2d 835, 837 (10th Cir. 1988). The specific issue on appeal was whether the trial court erred in failing to enforce the jury waiver provision based on a finding of fraud in the inducement of the contract generally without proof that the waiver provision was itself fraudulently induced. *Id.* The Tenth Circuit, citing to *Simler*, stated that "[t]he right to jury trial in the federal courts is governed by federal law" and further observed that "[a]greements waiving the right to trial by jury

are neither illegal nor contrary to public policy." *Id.*[4] The Tenth Circuit then concluded that, under federal law, general allegations of fraud were insufficient to invalidate the jury trial waiver provision, and the provision was therefore enforceable. *Id.* at 837-38.

In accord with *Telum*, numerous courts in the Tenth Circuit have enforced pre-dispute contractual jury trial waivers as long as they were knowing and voluntary. *See, e.g.*, *Bevill Co. v. Sprint/United Mgmt. Co.*, 304 F. App'x 674, 682-83 (10th Cir. 2008); *Walker v. SC Realty Servs., Inc.*, No. 15-CV-9932-JAR-TJJ, 2016 WL 4245487 (D. Kan. Aug. 11, 2016); *Am. Bank & Tr. Co. v. Bond Int'l Ltd.*, No. 06CV0317-CVE-FMH, 2006 WL 2947088, at *2 (N.D. Okla. Oct. 16, 2006). The Bank, relying on this line of authority, argues that the contractual jury trial waivers involved here – which were a conspicuous part of a contract that was negotiated by sophisticated parties – are enforceable.

J&J has a decidedly different take on the issue. It argues that, under *Erie* and its progeny, the validity of the waiver is a matter of substantive state law and the cases cited by the Bank are factually distinct because none involved the enforcement of a contractual provision that is void under state law. This argument is not without merit.

Although not universally true, questions concerning a contract's validity and interpretation are often characterized as substantive matters governed by state law. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 221 (2d Cir. 2014) ("Contract law—including

---

[4] For this latter proposition, *Telum* cited to *McCarthy v. Wynne*, 126 F.2d 620, 623 (10th Cir. 1942), which involved claims originating under Oklahoma law. In *McCarthy*, the Tenth Circuit found that a private contract to waive a jury trial on certain claims was "neither illegal nor contrary to public policy" and was binding on the parties. *Id.* at 623. However, in that case, as in *Telum*, the parties did not appear to contest the validity of the waiver under the state constitution.

the rules governing contract interpretation—is quintessentially substantive for *Erie* purposes, and therefore primarily the realm of the states."). Further, two circuit courts have concluded that state law governs the validity of a pre-dispute contractual waiver provision. In *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 992 (7th Cir. 2008), the Seventh Circuit explained that "[t]here is no general federal law of contracts" and "that state law governs the validity of a bench-trial agreement in a case under the diversity jurisdiction." In *In re Cnty. of Orange*, 784 F.3d 520, 531 (9th Cir. 2015), the Ninth Circuit, after conducting a thorough *Erie* analysis, concluded that "[t]he law governing jury trial waivers in federal court is federal procedural law" but that "federal courts sitting in diversity must apply the relevant state law to evaluate the validity of a pre-dispute jury trial waiver when that law is more protective than federal law." Additionally, in jurisdictions where, as argued here, state law precludes pre-dispute contractual jury trial waivers, district courts have split on whether state or federal law controls. *Compare IHI E&C Int'l Corp. v. Robinson Mech. Contractors, Inc.,* No. 1:19-CV-04137-JPB, 2020 WL 13594954, at *1 (N.D. Ga. Nov. 18, 2020) *with Georgia Power Co. v. Westinghouse Elec. Co. LLC,* No. CV 112-167, 2013 WL 12204328, at *1 (S.D. Ga. Sept. 30, 2013); *see also* 9 Fed. Prac. & Proc. Civ. § 2303 (4th ed.) ("However, federal courts have not reached a consensus on whether state or federal law governs the enforcement of a pre-dispute contractual jury waiver.").

  Here, the Tenth Circuit's decision in *Telum* provides strong support for the argument that the enforceability of a pre-dispute contractual jury trial waiver is a matter of federal law. However, as both the Seventh and Ninth Circuits have recognized, the court in *Telum*

7

was not presented with the precise issue involved here – whether federal or state law controls the validity of a contractual waiver when there is an (alleged) conflict between the federal standard and state law. Ultimately, however, the Court finds it unnecessary to wade into these unsettled waters. If, as the Bank contends, federal law governs, the waiver is enforceable because it was knowing and voluntary.[5] But even assuming, as J&J contends, that state law controls, the Court is unpersuaded that this contractual provision is void under Oklahoma law.

The Oklahoma Constitution, like the Seventh Amendment, protects the right to trial by jury in certain actions. OK Const. Art. II, § 19. The Oklahoma Constitution also contains a "unique" provision, *Dean Witter Reynolds, Inc. v. Shear*, 796 P.2d 296, 301 (Okla. 1990) (Kauger, J., concurring), referred to as section 8:

> Any provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void.

OK Const. Art. XXIII, § 8. In *Home Vest Cap., LLC v. Ret. Application Servs., Inc.*, 466 P.3d 1 (Okla. Civ. App. 2020), the Oklahoma Court of Civil Appeals held that the "plain language" of section 8 rendered a pre-dispute contractual jury trial waiver contained in a

---

[5] J&J relies on its argument that the federal knowing and voluntarily standard is inapplicable and does not specifically contest the Bank's assertion that the standard is satisfied in this case. The Bank has adequately shown that the provisions were a conspicuous part of the Loan Agreement and Guaranty Agreements and that the Agreements were negotiated by sophisticated parties. The waivers were therefore knowing and voluntary and enforceable under the federal standard. *See Am. Bank & Tr. Co.*, 2006 WL 2947088, at *2 (enforcing waiver where "both parties to the contract were sophisticated and represented by legal counsel").

bank account deposit agreement void. *Id.* at 3. J&J relies on section 8 and *Home Vest* to argue that the waiver in this case is also void under Oklahoma law.

When interpreting state law, federal courts "are not bound by decisions of lower state courts" but must instead "determine issues of state law as we believe the highest court in the state would determine them." *Fransen v. Conoco, Inc.*, 64 F.3d 1481, 1492 n. 10 (10th Cir. 1995). In making this determination, federal courts consider "decisions of a state's intermediate appellate courts [as] some evidence of how the state supreme court would decide the issue …, even if they are not binding precedent under state law." *Id. Home Vest* was approved for publication by the Court of Civil Appeals but not the Oklahoma Supreme Court.[6] As a result, the decision does not have precedential value, but only persuasive effect. Okla. Sup. Ct. R. 1.200(d)(2); *Leo v. Oklahoma Water Res. Bd.*, 536 P.3d 939, 946 ("Opinions published by the Court of Civil Appeals have no precedential value and are merely persuasive."). Giving *Home Vest* the appropriate deference as persuasive authority, the Court is nevertheless convinced that the Oklahoma Supreme Court would decide the issue differently.

To start, the Oklahoma Supreme Court has repeatedly upheld the constitutionality of arbitration agreements, which necessarily involve the waiver of the right to a jury trial. In *City of Bethany v. Pub. Emps. Rels. Bd. of State of Okl.*, 904 P.2d 604, 614-15 (Okla. 1995), which addressed the constitutionality of a statute requiring mandatory grievance arbitration in the collective bargaining context, the Oklahoma Supreme Court held that

---

[6] The Oklahoma Supreme Court initially granted certiorari in *Home Vest* before recalling its previous grant and denying certiorari.

section 8 "does not preclude such arbitration agreements" because, among other reasons, "the right to a jury trial guaranteed by the Okla. Const. art. 2, § 19, is waivable and not all disputes between the parties are required to be resolved by a jury—the right to a jury trial depends on the nature of the dispute." The Oklahoma Supreme Court reiterated this conclusion in *Rollings v. Thermodyne Indus., Inc.,* 910 P.2d 1030 (Okla. 1996). The specific issue in *Rollings* was whether a private agreement to submit a future dispute to arbitration violates OK Const. Art. II, § 6, which protects access to the courts. *Id.* at 1031. However, amicus curiae also argued that the arbitration agreement violated the right to a jury trial contained in OK Const. Art. II, § 19. *Id.* at 1031 n.1. The Oklahoma Supreme Court concluded that the arbitration agreement was enforceable and cited with approval to *City of Bethany's* conclusion that mandatory grievance arbitration does not violate the constitutional right to a jury trial. *Id.* Next, in *City of Anadarko v. Fraternal Ord. of Police, Lodge 118*, 934 P.2d 328, 331 (Okla. 1997), the Oklahoma Supreme Court relied on *City of Bethany* and *Rollings* to hold that binding interest arbitration does not violate the Oklahoma Constitution because the right to a jury trial codified in section 19 is waivable.

  *Home Vest* briefly acknowledged this line of cases but concluded that arbitration agreements are "distinguishable from jury trial waivers" without explaining how they are materially different. On the contrary, as the Tenth Circuit has explained, analogizing between arbitration agreements and contractual jury trial waivers is "especially appropriate" because "submission of a case to arbitration involves a greater compromise of procedural protections than does the waiver of the right to trial by jury." *Telum*, 859 F.2d at 838. Thus, if a party can contractually agree to forego a judicial forum altogether without

offending the right to a jury trial contained in section 19, it follows that a party can contractually agree to resolve a dispute via a bench trial.

Further, the construction of section 19 and section 8 advanced by *Home Vest* is inconsistent with the way the Oklahoma Supreme Court has interpreted these constitutional provisions. In *Rollings*, 910 P.2d at 1032, the Oklahoma Supreme Court explained that section 8 "has not been interpreted literally and restrictively" and that "[a] violation of Section 8 is dependent on the abridgment of some other state constitutional right." The constitutional violation alleged here is the right to a jury trial contained in section 19. But Oklahoma's highest courts have repeatedly interpreted section 19 as a constraint on the government, rather than a constraint on a party's ability to voluntarily waive a jury trial. *See Massey v. Farmers Ins. Grp.*, 837 P.2d 880, 884 (Okla. 1992) (interpreting section 19 and stating that "no act of government may deny the right of trial by jury to a person. While as in the case of arbitration, a person may waive his right to jury trial, the legislature cannot waive it for him"); *Barzellone v. Presley*, 126 P.3d 588, 601 (Okla. 2005) ("The constitutional right to a jury trial is a personal right which the Legislature cannot waive through creating a fiscal barrier so unreasonable as to eliminate the right itself."); *Seymour v. Swart*, 695 P.2d 509, 511 (Okla. 1985) ("This right cannot be abrogated arbitrarily by a court; it can be surrendered only by voluntary consent or waiver… it cannot be annulled, obstructed, impaired, or restricted by legislative or judicial action."); *Jenkins v. State*, 120 P. 298, 299 (Okla. Crim. App. 1912) ("The right of trial by jury is purely a personal right and privilege that may be waived by the defendant. The provisions of the Bill of Rights quoted are restrictions on the legislative power, and place the right beyond the power of

the Legislature to abridge it."). Because section 19 operates as a restraint on the government, a party's voluntary waiver of the right to a jury trial, whether by contract or otherwise, does not abridge a state constitutional right. And without an underlying state constitutional violation, "there is no Section 8 violation." *Rollings*, 910 P.2d at 1032; *see also City of Anadarko*, 934 P.2d at 331 (holding that binding interest arbitration did not implicate section 8 because the there was no violation of section 19's right to a jury trial).

There is one additional point that, in the Court's opinion, undercuts the persuasive value of *Home Vest*. The argument advanced by J&J and adopted in *Home Vest* has been discussed in several concurring opinions filed in cases involving arbitration clauses. *See, e.g., Cannon v. Lane,* 867 P.2d 1235 (Okla. 1993) (Opala, J., concurring); *Long v. DeGeer,* 753 P.2d 1327, 1330 (Okla. 1987) (Opala, J., concurring). Although the Oklahoma Supreme Court has had several opportunities to adopt this argument and declare the jury trial waiver implicit in every arbitration agreement unconstitutional, a majority of the Oklahoma Supreme Court has never elected to do so. The repeated refusal to embrace this argument suggests that *Home Vest's* holding is at odds with the way the Oklahoma Supreme Court would decide the issue.

For all these reasons, the Court concludes that the waiver provision involved here – which was clear, conspicuous, and negotiated by sophisticated parties – is not void under Oklahoma law. Notably, this conclusion is in accord with the only other federal district court that has addressed *Home Vest's* effect on the enforceability of a contractual jury trial waiver. *See Transcon. Gas Pipe Line Co., LLC v. Kibby Welding, LLC*, No. 18-CV-0445-CVE-FHM, 2019 WL 3754211, at *5 (N.D. Okla. Aug. 8, 2019) ("Plaintiff has not shown

12

that there is binding Oklahoma precedent that would clearly establish that Oklahoma law is actually more protective than federal law.").

Having concluded that, under either federal or state law standards, the waiver provision is enforceable, the only issue that remains is whether the claims and counterclaims fall within the waiver's scope. The waiver provision contained in the Loan Agreement states that it applies to "any dispute, action or proceeding to enforce or defend any rights (whether based on contract, tort or otherwise) under this Loan Agreement…or arising from any banking relationship existing in connection with this Loan Agreement." Similarly, the waiver provision contained in the Guaranty Agreement states that it applies to "any action or proceeding based upon, or related to, the subject matter of this guaranty."

Despite this broad language, J&J contends that its tort and statutory claims do not fall within the scope of the waiver. The Court disagrees. The plain language of the waiver provision indicates that it extends to claims based in contract, tort or otherwise that arise from the Loan Agreement or the banking relationship existing in connection with the Loan Agreement. J&J's tort claims, alleging that the Bank misrepresented its intention to extend the loan or issue a letter of credit for the purpose of inducing J&J's reliance on the Bank for financing, arise from the banking relationship that existed between the parties in connection with the Loan Agreement. Similarly, J&J's claim for breach of construction trust, alleging that the Bank violated the duty of trust imposed upon the loan funds by refusing to make disbursements, arises from the Loan Agreement and the parties' banking relationship. The claims therefore fall within the scope of waiver. *See Pinstripe, Inc. v. Manpower, Inc.,* No. 07-CV-620GKFPJC, 2009 WL 1457704, at *2 (N.D. Okla. May 22,

2009) (finding that broadly worded contractual jury trial waiver applied to tort claims); *Little v. Gray Media Grp., Inc.,* 717 F. Supp. 3d 1058, 1065 (D. Kan. 2024) (applying contractual jury trial waiver to statutory claims).

## Conclusion

In *Telum*, the Tenth Circuit applied federal law to determine the enforceability of a pre-dispute contractual jury trial waiver. Although not on all fours with this case, *Telum* weighs against J&J's argument that the Court should defer to state law to determine the validity of a contractual jury trial waiver. But even if state law governs the issue, the Court is not persuaded that Oklahoma law is in conflict with the federal standard. To be sure, *Home Vest* says otherwise. But there is no binding authority establishing that a contractual jury trial waiver is invalid and, as outlined above, there is good reason to think that this issue would be decided differently by the Oklahoma Supreme Court. In sum, the parties knowingly and voluntarily executed contractual jury trial waivers that encompass the claims asserted in this case and the waivers are enforceable.

Defendant/Counterclaimant Simmons Bank's Motion to Strike Demand for Jury Trial [Doc. No. 65] is therefore GRANTED.

IT IS SO ORDERED this 21st day of November, 2025.

TIMOTHY D. DeGIUSTI
Chief United States District Judge